UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IGNACIO ARROYOS, | ) | 1:04-CV-6694-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT JO ANNE B. |
| | ) | BARNHART, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | IGNACIO ARROYOS |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented[1] to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment. The matter is currently

---

[1] On April 8, 2005, District Judge Anthony W. Ishii reassigned this case to the undersigned Magistrate Judge.

1

before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

## HISTORY

On January 28, 2003, Plaintiff filed applications for SSI and DIB with a protective filing date of December 30, 2002, alleging disability commencing on August 21, 1998, due to alcoholism, liver disease, chronic anemia, and ulcers that made him short of breath, tired, and subject to constant pain in the liver area. (Tr. 76-80, 94, 330-34.)

After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable James N. Baker, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on August 26, 2003. Plaintiff appeared with an attorney and testified; a Spanish interpreter also was present. (Tr. 63-72, 335-36, 16, 26-55.) On September 16, 2004, the ALJ denied Plaintiff's application for benefits. (Id. at 16-19.)

The ALJ concluded that Plaintiff was insured through December 31, 2001, and thus the evidence was required to establish that Plaintiff was disabled on or before December 31, 2001. (Tr. 16.) The ALJ concluded that Plaintiff's esophageal varices, grade I to II status post banding, mild portal hypertensive gastropathy, and asthma did not singly or in combination meet or equal a listing; Plaintiff had the residual functional capacity (RFC) to lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hourS in an eight-hour workday, but must avoid concentrated

2

exposure to pulmonary irritants; Plaintiff could thus perform his past relevant work (PRW) of forklift driver because it did not require performance of any activities precluded by Plaintiff's RFC; and thus Plaintiff, whose subjective complaints and alleged functional limitations were not as severe as asserted and were only partially credible, was not disabled at any time through the date of the decision. (Tr. 18-19.)

Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on October 28, 2004, (Tr. 6-8), Plaintiff filed the complaint in this action on December 14, 2004. Briefing commenced on September 20, 2005, and was completed with the filing on November 15, 2005, of Defendant's brief.

## ANALYSIS

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts

to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2004);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. <u>See</u> 20 C.F.R. § 416.920.

---

[2] All references are to the 2004 version of the Code of Federal Regulations unless otherwise noted.

I. <u>Subjective Complaints</u>

Plaintiff argues that in connection with determining Plaintiff's RFC, the ALJ improperly assessed Plaintiff's testimony with respect to subjective symptoms. Plaintiff argues that the ALJ stated only one reason for rejection, namely, the failure of the objective medical evidence to support the level of pain that Plaintiff described; further, the reason was not clear and convincing.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. <u>Byrnes v. Shalala</u>, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently

specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to produce some symptoms, the degree of limitation was not supported by the objective medical evidence and was not entirely credible.

The ALJ stated several reasons to support his rejection of Plaintiff's credibility. The ALJ relied on the fact that treatment for Plaintiff's conditions was generally only intermittent and conservative. (Tr. 17.) The record reflects that

6

Plaintiff's treatment before the date last insured (December 31, 2001) was intermittent and was for routine conditions such as back pain exacerbation, right-sided pain, bronchitis, and mild degenerative changes of the AC joint in one shoulder; treatment was conservative. (Tr. 219-20, 199-200, 193-94, 190, 213.)

Treatment thereafter was likewise conservative, including a suggestion of iron replacement for anemia, a note to consider spirometry testing for COPD, and a note indicating that Plaintiff was a chronic smoker with respect to his COPD in March 2002 (Tr. 270-73); treatment with medications for back pain and shortness of breath in October 2002 (Tr. 156-57); a chest x-ray in November 2002 reflecting normal cardiac size and only degenerative changes of the thoracic spine and right acromioclavicular joint (Tr. 148); transfusion in November 2002 for bleeding (Tr. 328-29); a normal ECG in November 2002 (Tr. 142); a normal ECG in May 2003 (Tr. 278-79); diagnosis from Dr. Wells, a radiologist, based on an abdominal sonogram in January 2003 of normal gallbladder, liver findings consistent with hepatocellular disease of fatty infiltration coupled with splenomegaly and a mild amount of ascites suggesting cirrhosis and possible portal hypertension (Tr. 131, 294); toothache and medications for an abscess in February 2003 (Tr. 327, 394); a diagnosis of splenomegaly in March 2003 (Tr. 392-93); low hemoglobin in April 2003 (Tr. 281); treatment of anemia and liver disease with medications in January and March 2003 (Tr. 274-77, 390-91); a notation of great improvement in abdominal pain with Prevacid and continuing treatment with medication in March 2003 (Tr. 256-68, 386-87); treatment of shortness of breath with medication in April and

7

1  June 2003 (Tr. 247-53); diagnosis of esophageal varices between
2  grade II and III without active bleeding, moderate portal
3  hypertensive gastropathy without any active bleeding, and
4  moderately severe erosive duodenitis with superficial ulcerations
5  in June 2003 to be treated with medications of Prevacid and
6  Inderal, and later esophageal banding (Tr. 348-49); treatment in
7  the form of esophageal banding in August 2003 and December 2003
8  with a recommendation that Plaintiff be scheduled for liver
9  transplant after being sent to UCLA (372-74, 363-64); notes in
10 January 2004 that Plaintiff had no complaints after the banding,
11 good appetite, no blood in his stools, and normal lungs (Tr.
12 362); another esophageal banding procedure in March 2004 with a
13 recommendation that Plaintiff would not need any more banding and
14 would be evaluated in six months (Tr. 357-58); and treatment of
15 back pain with Tylenol 3 in May 2004 (Tr. 353-54).
16     The Court concludes that substantial evidence thus supports
17 the ALJ's characterization of the objective medical evidence,
18 which reflected mainly conservative treatment, or conditions that
19 improved or resolved with treatment. It is established that
20 although the inconsistency of objective findings with subjective
21 claims may not be the sole reason for rejecting subjective
22 complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir.
23 1997), it is one factor which may be considered with others,
24 Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.
25 Commissioner 169 F.3d 595, 600 (9th Cir. 1999). The ALJ here
26 properly relied on the lack of objective medical evidence
27 supporting Plaintiff's claim of disabling subjective symptoms.
28     Further, an ALJ may rely on the conservative nature of

treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995).

The ALJ concluded that the esophageal banding procedures resolved Plaintiff's problems with varices and bleeding, noting Plaintiff's three banding procedures; subsequent clinic notes that documented no significant symptoms (Tr. 356, 358); and Plaintiff's own reports that he had no problems with activities of daily living or walking, including walking two to three blocks to the grocery store in July 2004 (Tr. 351, 17). He also reasoned that although there was a suggestion of a liver transplant in December 2003 after the second esophageal banding, there was nothing showing any follow through, and Plaintiff had had no significant subsequent complaints; further, Plaintiff himself testified that he no longer had any gastrointestinal bleeding. (Tr. 17, 18, 364, 35.) The record supports these findings. It is established that it is appropriate to consider the inconsistency of a documented improvement with claims of constant pain. Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ stated that although Plaintiff had complained of shortness of breath, there were no pulmonary function studies, and Plaintiff had smoked at least one-half pack of cigarettes per day for thirty-five years. (Tr. 17, 18.) The record reveals that Plaintiff continued smoking even though he received medical advice to quit smoking. (Tr. 50, 191, 377, 367, 305, 271, 251.) In evaluating Plaintiff's claim of disabling shortness of breath, the ALJ properly considered the fact that Plaintiff continued to smoke after having been advised to quit. An ALJ may rely on a

9

claimant's inadequately explained failure to seek treatment or follow a prescribed course of treatment in rejecting a subjective complaint of disabling pain. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991).

The ALJ also noted that Plaintiff drank alcohol, which had produced symptoms of cirrhosis, esophageal varices and gastrointestinal bleeding. (Tr. 17.) The record supports this assertion. (Tr. 256, 348-49, 389, 245 [notation on treatment note of June 12, 2003, that Plaintiff had quit abusing alcohol two or seven weeks or months ago], 367 [report on December 1, 2003, of having quit alcohol for a year] , 275 [report in January 2003 of having quit drinking since transfusions in November 2002], 34 [Plaintiff's testimony that he quit drinking in October 2003 when his doctor told him that he had to quit drinking or else he was going to die].)

The ALJ noted Plaintiff's activities of daily living, including helping with chores such as vacuuming, dusting, taking care of his personal needs, and walking to the store two blocks away. (Tr. 18.) The record contains evidence that Plaintiff cleaned for two hours at a time with some rest, including vacuuming, dusting, washing dishes, performing his personal care, and walking two blocks to the grocery store and carrying a two-liter soda home; further, he could cook if trained. (Tr. 37-39, 40, 42.) A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to the work setting is relevant;

10

a specific finding as to this fact may be sufficient to discredit a claimant's allegations. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ here appropriately considered the evidence of Plaintiff's considerable activities of daily living.

Finally, the ALJ noted that although Plaintiff had claimed that he watched TV and did not do yard work because he would tire, he also stated that he walked to the grocery store two blocks away; the ALJ noted the inconsistent assertion of Plaintiff that he could only walk one block and stand or walk for twenty minutes, and could not kneel, stoop, squat, or bend. (Tr. 18.) The ALJ also mentioned that Plaintiff had testified that the only restriction his doctor had placed upon him was to stop smoking. (Tr. 18.) However, it is clear from Plaintiff's own testimony that he was also instructed not ever to drink alcohol. The record supports the ALJ's conclusion that there were inconsistencies bearing upon Plaintiff's credibility. Included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999). Here, the ALJ properly

11

considered the inconsistencies present in Plaintiff's testimony and reports.

The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain and limitation to the extent alleged, and that the ALJ's reasons were supported by substantial evidence in the record and were sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

II. <u>Past Relevant Work</u>

Plaintiff argues that the ALJ improperly evaluated the opinions of Plaintiff's physicians and the state agency physicians in determining that Plaintiff could perform his PRW. Plaintiff complains that the ALJ failed to state reasons for rejecting the state agency physicians' opinions and should have imposed the limitation against even moderate exposure to pulmonary irritants such as fumes, dust, gases, and poor ventilation, that were recommended, according to Plaintiff, by both Dr. Rios and the state agency physicians, instead of a limitation of avoiding concentrated exposure to pulmonary irritants. Further, the ALJ failed to state any reasons with respect to his treatment of expert opinions.

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating

the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the medical opinion of a claimant's treating physician is uncontroverted, then an ALJ must present clear and convincing specific reasons, supported by substantial evidence in the record, for rejecting the uncontroverted medical opinion of a claimant's treating physician. Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. Cotton v. Bowen, 799 F.2d at 1408.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d at 1041.

The ALJ noted the following regarding the state agency physicians' recommendations and the report of consulting

internist Dr. Tomas B. Rios, who examined Plaintiff on April 7, 2003 (Tr. 227-30):

> In April 2003, consultative internist Dr. Rios diagnosed alcoholic liver disease, reactive airway disease and status post exploratory laparotomy (Exhibit 3F, p. 3). Dr. Rios found no clinical findings or significant symptoms related to liver disease and noted that the claimant's asthma appeared to be clinically controlled. He concluded that the claimant's only work-related restriction would be to avoid working in an enclosed environment where there was frequent exposure to smoke, dust or fumes (Exhibit 3F, p. 4).
>
> The state agency medical consultants concluded that the claimant retains the residual functional capacity to perform work at all exertional levels not involving even moderate exposure to pulmonary irritants (Exhibit 6F).

(Tr. 18.) The ALJ then stated that after reviewing all of the evidence, he found that Plaintiff retained the RFC to perform light work[3] but "must avoid concentrated exposure to pulmonary irritants." (Tr. 18.) Consequently, Plaintiff could perform his PRW of fork-lift driver as he performed it, which required no walking or standing and required sitting eight hours a day, frequently lifting and carrying less than ten pounds, and not supervising any other workers. (Tr. 18.)

---

[3] Light work is defined by 20 C.F.R. § 404.1567(b) (DIS) and 20 C.F.R. § 416.967(b)(SSI) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

14

First, although the ALJ noted the state agency physicians' recommendation of work at all exertional levels not involving even "moderate exposure" to pulmonary irritants (Tr. 18), the opinion of the state agency physicians was ambiguous. In one location, state agency physician Dr. Keith M. Quint[4] checked a box indicating that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 239.) However, in another location in the same report (Tr. 241, 235-42), Dr. Quint indicated that he adopted the recommendation of the CE, which was consistent with the medical evidence of record; since the claimant had stopped drinking, his condition had improved, and his hemoglobin was o.k. at 11.8. (Tr. 241.)

Reference to the recommendation of the CE (assumed to be a reference to Dr. Rios), however, reveals that the CE's recommendation was slightly different: Dr. Rios opined that Plaintiff's condition was more reminiscent of clinically controlled asthma and devoid of findings suggestive of chronic hypoxic state or significant chronic obstructive pulmonary disease; nevertheless, Plaintiff "should be precluded from working in an enclosed environment where there is frequent exposure to smoke, dust or fumes that can exacerbate this underlying reactive airway disease." (Tr. 229-30.) Thus, the state agency physician's limitation to avoid even moderate exposure to pulmonary irritants was actually more restrictive than the consulting examiner's recommendation, even though the expressed intent of the state agency physician was to adopt a

---

[4] Dr. Quint rendered his opinion on May 28, 2003, and Dr. George W. Gugg affirmed the assessment on July 21, 2003. (Tr. 242.)

limitation consistent with that of consulting examiner Dr. Rios.

The Court notes that to the extent that evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Because the ALJ has authority to interpret ambiguous medical opinions, Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993), the Court must defer to the ALJ's decision. It was well within the ALJ's prerogative to resolve the ambiguity.

Further, the Court notes that in any event, the ALJ gave specific and legitimate reasons, supported by substantial evidence, for adopting the opinion of the consulting examining doctor. In so concluding, the Court examines the ALJ's decision as a whole. The ALJ stated that in determining Plaintiff's RFC, he considered the Plaintiff's subjective complaints but relied on the objective medical evidence. (Tr. 17.) The ALJ noted the conservative, intermittent treatment of various conditions, including Plaintiff's bronchitis (Tr. 17, 193-95); the lack of referrals to specialists or of pulmonary function testing (Tr. 17); the normal chest x-ray taken in November 2002 with the only findings being degenerative changes of the thoracic spine and the right acromioclavicular joint (Tr. 17, 148); the fact that despite complaints of disabling shortness of breath, Plaintiff smoked (Tr. 17, 275, 251); Plaintiff's admitted ability to engage in activities of daily living and walking without asthma with no treatment other than medication (Tr. 17, 351, 352, 362); and Plaintiff's being only partially credible with respect to his limitations (Tr. 17, 18).

16

The reasons stated by the ALJ were supported by substantial evidence and were specific and legitimate. In weighing opinions, more weight is generally given to examining sources than to nonexamining sources. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). Greater weight will be given to opinions based on or supported by relevant evidence, such as medical signs and laboratory findings. 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3); see Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). Likewise, the better an explanation a source provides for an opinion, the more weight will be given to the opinion. Id. The more consistent an opinion is with the record as a whole, the more weight will be given to the opinion. 20 C.F.R. § 404.1527(d)(4); 20 C.F.R. § 416.927(d)(4). More weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(d)(5); 20 C.F.R. § 416.927(d)(5). Further, it is permissible to rely on the Plaintiff's testimony regarding her impairments in discrediting a treating physician's opinion. Fisher v. Schweiker, 568 F.Supp. 900, 903 (N.D.Cal. 1983). The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Here, the ALJ's reliance on the opinion of a consulting, examining physician was appropriate, and the opinion of such an expert is substantial evidence where, as here, it is based on the expert's own examination and clinical findings. Tonapetyan v.

17

1  Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

## DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Ignacio Arroyos.

IT IS SO ORDERED.

**Dated:   January 26, 2007**          /s/ Sandra M. Snyder
icido3                                  UNITED STATES MAGISTRATE JUDGE